ADAM G. GASNER (SBN 201234)
Law Chambers Building
345 Franklin Street
San Francisco, CA  94102
Telephone:	415-782-6000
Facsimile:	415-782-6011
E-Mail:	adam@gasnerlaw.com

Attorney for Defendant
ALLAN JOSUE FUNEZ OSORTO

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>      v.<br><br>ALLAN JOSUE FUNEZ OSORTO,<br><br>           Defendant. | No. 19-CR-00381-CRB-4<br><br>DEFENDANT'S SENTENCING MEMORANDUM<br><br>Date: June 3, 2020<br>Time: 10:00 a.m.<br><br>HON. CHARLES R. BREYER |

## I.  INTRODUCTION

Defendant ALLAN JOSUE FUNEZ OSORTO ("Mr. Osorto"), an indigent immigrant with no prior criminal record, comes before the Court for sentencing after having pled guilty to Count One of the Superseding Information[1], a violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C) [Conspiracy to Distribute Controlled Substances], in a written plea agreement pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B). Dkt. 206. [2]

---

[1] Dkt. 204

[2] This plea agreement was subsequently set-aside by the Court because it contained language requiring that defendant waive rights to compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). [Dkt. 210].  The parties have since

The defense makes the following sentencing recommendations:

1. Regarding the Court's finding on the presentence investigation report (PSR): the PSR was waived in the interest of expediting Mr. Osorto's sentencing.

2. Regarding the Court's finding on whether a mandatory minimum sentence applies, the instant conviction carries no mandatory minimum sentence.

3. Regarding the Court's determination of the guideline range, before departures or variances, the defense requests the Court find the following:

    a.  Total offense level:          23

    b.  Criminal history category:    I

    c.  Guideline range:              46-57 mos.

    d.  Supervised release range:     3 years to life

    e.  Maximum fine:                 $1,000,000.00

    f.  The defense requests that the fine be waived or below guideline range because of inability to pay.

4. Regarding the guideline sentencing determination, the defense requests the following:

    a.  The court impose a sentence outside the sentencing guideline system (i.e., a downward variance).

5. Regarding departures pursuant to the guideline manual, the defense submits that no departures apply in the instant case.

6. Regarding the Court's determination for a variance, the defense requests the following:

    a)  A sentence below the advisory guideline range consistent with the Plea Agreement. Dkt. 206, ¶ 7.

---

worked out a new plea agreement that does not contain a 3582 waiver, which the defendant will sign in open court at the next scheduled court date on June 3, 2020.

*USA v. Funez Osorto*, No. 19-CR-00381-CRB
Sentencing Memorandum

b) The defense is requesting a variance below guidelines pursuant to 18 USC 3553(a)(1) for the following reasons related to the history and characteristics of the defendant:

   a. marital ties and responsibilities;
   b. non-violent offender;
   c. employment record;
   d. tenuous physical condition;
   e. pre-sentence remorse;
   f. acceptance of responsibility;
   g. early plea;
   h. good conduct on remand;
   i. time served; and
   j. to avoid unwanted sentencing disparities among defendants.

7. Regarding the court determination of restitution, the defense requests the Court determine restitution not applicable.

The defense requests that the Court, for the compelling reasons below, exercise its discretion and impose a significant downward variance from the guideline range and sentence Mr. Osorto to time served, followed by 3 years' supervised release and a $100 special assessment fee.

## II. SENTENCING

With the advent of *U.S. v. Booker*, 125 U.S. 738 (2005), the Court is restored with the power to sentence as it sees fit within the statutory framework of 18 U.S.C. § 3553(a). The restoration of this power gives the Court real discretion to fashion a sentence "sufficient but not greater than necessary" to achieve the purpose of sentencing set forth in 18 U.S.C. §3553(a)(2) after considering the following:

GASNER CRIMINAL LAW
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102

(1) The nature and circumstances of the offense and the history and characteristics of the defendant [§3553(a)(1)];

(2) The need for the sentence imposed:

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner [§3553(a)(2)];

(3) The kinds of sentences available [§3553(a)(3)];

(4) The advisory – but non-mandatory – Sentencing Guidelines [§3553(a)(4) and (a)(5)];

(5) The need to avoid unwarranted sentencing disparity among defendants with similar records and similar conduct [§3553(a)(6)]; and

(6) The need to provide restitution to any victim of the offense [§3553(a)(7)].

In this case, the Court must choose the minimally sufficient sentence to fulfill the purposes of sentencing based on a consideration of all §3553(a) factors. *Kimbrough v. U.S.,* 128 S.Ct. 558, 570 (2007). Accordingly, the defense submits that a time served sentence is minimally sufficient to fulfill the purpose of sentencing. (*See* argument, *Infra.*)

**A. THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT [§3553(a)(1)]**

**The Nature and Circumstances of the Offense:**

The Plea Agreement accurately summarizes Mr. Osorto's offense behavior. In or about January of 2019 to June 21, 2019, Mr. Osorto, residing in Oakland, a street-level dealer, participated in a conspiracy to sell drugs – heroin, methamphetamine, and cocaine base - in the

Tenderloin district of San Francisco. He lived at two different houses in East Oakland where his supplier visited and meted out drugs for Mr. Osorto to sell in The City.

According to the Complaint (Dkt.1), Mr. Osorto and his codefendants were the subjects of a coordinated investigation by the DEA, the San Francisco Police Department, and the Richmond Police Department which involved surveillance, wiretaps, and controlled buys.

On January 28, 2019, the DEA captured via wiretap a phone conversation between Mr. Osorto and his supplier, Reanos-Moreno, which involved the subjects of Mr. Osorto's rent at the 103rd Street house and an admonishment from Reanos-Moreno to "get on the ball and go to work." Dkt. 1, p. 38.

On April 17, 2019, SFPD officers conducted surveillance and undercover drug buys near the 300 block of Golden Gate Avenue where Mr. Osorto was detained after officers witnessed him conduct a drug transaction and, on discovering he was in the midst of undercover officers, toss an object under a parked car on the street. An officer retrieved the object which was a recyclable coffee cup containing individual baggies of presumptive drugs. Dkt. 1, pp. 62-63.

On June 11, 2019, an SFPD officer conducting surveillance on Mr. Osorto saw him travel from his 103rd street home to the intersection of Hyde Street and Golden Gate Avenue in The City and engage in drug sales there. Dkt. 1, p. 65.

On June 21, 2019 SFPD officer saw a codefendant in this case make a delivery of suspected drugs at the 103rd Street house where Mr. Osorto resided. Dkt. 1, p. 81. Later that night, SFPD officers along with a DEA agent, executed a search warrant at the 103rd Street house where they detained Mr. Osorto in a room where they found drugs, $4,465.00 in cash, and personal effects linking Mr. Osorto to the room in the house. Dkt. 1, p. 82.

Finally, on August 6, 2019, law enforcement executed an arrest warrant at Mr. Osorto's subsequent residence on High Street in Oakland where Mr. Osorto was found with drugs and cash

linked to the drug conspiracy and he was arrested. Plea Agreement, ¶ 2.

**The history and characteristics of the defendant:**

Based upon a jail call interview, defense counsel learned the following from Mr. Osorto. He is a 28-year-old Honduran national, from the capital city, Tegucigalpa. His mother, a worker in a clothing factory, raised him by herself. Mr. Osorto completed high school and had his own business selling clothes. He also worked as a house painter and drove a motorcycle taxi. As a young man in that troubled country, Mr. Osorto suffered a hellish predicament: as a result of mistaken identity, a government militia group identified him as a member of MS-13. Consequently, the militia forced Mr. Osorto to identify a gang member that the militia eventually killed. This placed Mr. Osorto in a perilous situation where the gang blamed him for the death of the former member, yet Mr. Osorto had no protection from the government. Mr. Osorto has never been a gang member.

The situation in his home country forced Mr. Osorto to leave, along with his wife, Sami Andino, and seek refuge and employment in the United States. In or about September of 2017, Mr. Osorto came to the U.S. and stayed a short time in Houston, Texas where he continued working as a laborer, in roofing and furniture delivery. Eventually, Mr. Osorto, with others, was caught in an ICE sweep at the motel he called home. He was sent to Buffalo, New York where he was granted bail and where he hoped to attain asylum relief. He continued as a laborer in Buffalo, however, after a short time he returned to his wife in Houston. From Houston, he and his wife travelled to Macon, Georgia where he worked for seven months painting houses before relocating in Oakland, California.

One can only wonder at the series of difficult decisions that brought Mr. Osorto from marked man in his home country, to undocumented alien in the U.S. working grueling jobs in the shadow of United States Immigration and Customs Enforcement.

Anyone passing judgement on Mr. Osorto must do so only after acknowledging the fact that

GASNER CRIMINAL LAW
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102

his migration is the result of the long-standing exploitative relationship between the United States and Honduras since the 1890's when U.S.-based banana companies essentially took over the economy of the country. With the imposition of railroads, a U.S. dominated banking system, and co-optation of the Honduran government by U.S. corporations enforced by our own military presence there, Honduras became a U.S. imperial holding.[3]

By 1914, the banana interests owned the majority of arable land in Honduras. The holdings grew through the next decade to the point where Honduran farmers lost any hope of achieving success. Over time, U.S. capital came to dominate Honduras' banking and mining industries and the weak state of the Honduran indigenous economy facilitated this ongoing process supported by U.S. military intervention and U.S. backing of the Honduran military.

In the 1980's, the Reagan administration used Honduras as a base of operations in its efforts to topple the Sandinistas in Nicaragua. The Reagan administration also did its part to compromise and further weaken the Honduran economy by deregulating the coffee trade and manufacturing sector in the interests of globalization at the expense of the local workers' welfare.

The post-Reagan era in Honduras was marked by its repressive military, human rights abuses, and wide-spread poverty. Honduras never had a chance. However, 2006 saw the election of Manuel Zalaya, a progressive reformist. During his brief term, the economy in Honduras began to improve for the people in part because of a raise in the minimum wage. Zalaya also sought to reform his country's constitution which was written by a former military government. In 2009, however, Zalaya was ousted in a coup with the tacit support of Obama's State Department.

Such is the environment into which Mr. Osorto was born and grew up. His personal story is the product of his country's own troubled past, which we must acknowledge, the U.S. went far in

---

[3] Joseph Nevins, *How US Policy in Honduras Set the Stage for Today's Migration*, October 25, 2018, https://theconversation.com/how-us-policy-in-honduras-set-the-stage-for-todays-migration-65935

7

*USA v. Funez Osorto*, No. 19-CR-00381-CRB
Sentencing Memorandum

causing. Our long history of intervention gave prominence to repressive governments, economic subservience, the polarization of Honduran society, brutal military tactics of control turned on the populace, and the rise of organized crime and drug trafficking. With cause comes effect and hence the waves of immigrants seeking asylum in the U.S.

Mr. Osorto's story proves that he is a hard worker, and given the chance, he would eagerly pursue a life of gainful employment. His role in this drug scheme was that of a low-level, unarmed, non-violent street dealer. He has spent enough time in custody with the added stress of COVID-19 quarantines at Santa Rita Jail. He deserves the opportunity to revive his pursuit of lawful political asylum and be reunited with his wife.

**B.   NEED FOR THE SENTENCE IMPOSED -- [§3553(a)(2) FACTORS]**

**1.   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense:**

Mr. Osorto expresses his remorse for his offense behavior and his resolve to never commit any violation of law. Accordingly, given Mr. Osorto's acceptance of responsibility for the offense conduct, justice would be met by a sentence of time served.

**2.   to afford adequate deterrence to criminal conduct:**

A sentence of time served for a non-violent, low-level street dealer with no criminal record will deter Mr. Osorto from reoffending and act as a general deterrent.

**3.   to protect the public from further crimes of the defendant:**

Mr. Osorto's criminal history is free of violent acts; he is on a positive path to rehabilitation; and the idea of reoffending is abhorrent to him.

**C.   THE ADVISORY – BUT NON-MANDATORY – SENTENCING GUIDELINES [§3553(a)(4) AND (a)(5)]**

Consistent with *Booker*, the sentencing guidelines are discretionary. Accordingly, the Court may craft a sentence "sufficient but not greater than necessary" to achieve a just sentence in

harmony with 18 U.S.C.§3553(a)(2).

The defense, on behalf of Mr. Osorto, implores the Court to impose a significant downward variance to reach a below-guidelines sentence of time served for these reasons:

1. Mr. Osorto' history and characteristics (*See* argument *supra*);

2. Mr. Osorto is a non-violent offender with no criminal history;

3. Mr. Osorto tenuous health amidst the current pandemic;

4. Mr. Osorto' wish to be a husband and productive citizen; and

5. Mr. Osorto's pre-sentence rehabilitation and remorse.

For the foregoing reasons, the defense requests a sentence below the Guidelines Range for a custodial sentence time served.

**IV.   CONCLUSION:**

For the foregoing reasons, it is respectfully urged that the Court sentence Mr. Osorto to the defense recommendation and all attendant conditions the Court deems appropriate.

Dated: May 27, 2020

                                                Respectfully submitted,

                                                ADAM G. GASNER
                                                Attorney for Defendant
                                                ALLAN JOSUE FUNEZ OSORTO